UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEXCELL INC., et al., | No. 2:18-cv-01621-KJM-DMC |
| Plaintiffs, | |
| v. | ORDER |
| STS HYDROPOWER LTD., et al., | |
| Defendants. | |

In this contract dispute between plaintiffs Texcell Inc. and Arnold Leong and defendants STS Hydropower Ltd., STS Hydropower, LLC and Eagle Creek Renewable Energy, LLC, defendants move for summary judgment of all of plaintiffs' claims. For the reasons below, the motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

The following facts are undisputed except where noted. On February 22, 1988, defendant STS Hydropower Ltd. entered into a thirty-year lease agreement ("Lease") with Richard D. Spight to lease certain real property in Butte County for the purpose of installing and operating a hydroelectric system on that property. Statement of Undisputed Facts (SUF) 2–4, ECF No. 48-2. Thereafter, STS Hydropower Ltd. constructed a hydroelectric facility on the property, called the Kanaka Facility (the "Facility"). SUF 11. In 2012, Mr. Spight sold the Butte

County property and assigned the Lease to plaintiff Texcell Inc. ("Texcell").  SUF 7.  It appears plaintiff Arnold Leong is the sole shareholder of Texcell.  *See* Mot. at 6.

On January 31, 2017, defendant Eagle Creek Renewable Energy, LLC ("Eagle Creek") acquired defendant STS Hydropower Ltd. and converted it into a limited liability company, named defendant STS Hydropower, LLC ("STS").  SUF 9.  STS succeeded to the interests of STS Hydropower, Ltd.  SUF 10.

At least as early as 2016, STS could not pay its costs and expenses of operation from revenues earned from selling electric power generated from the Facility.  SUF 21, 23–25.  There is some evidence suggesting Eagle Creek and STS were considering terminating the Lease in or about July 2017 and made certain communications to that effect, although neither party asserts the Lease was formally terminated then.  SUF 13–16 (disputed).

On or about August 29, 2017, a wildfire now known as the Ponderosa Wildfire burned over 4,000 acres of land in Butte County and destroyed the Facility.  SUF 17.  Shortly afterwards, Texcell demanded that STS rebuild the Facility, based on the terms of the Lease.  SUF 18.  STS refused, and formally terminated the Lease in writing on September 27, 2017, citing Section 9.2 of the Lease.  SUF 20.

Plaintiffs filed this suit in Butte County Superior Court on May 14, 2018, and defendants removed it to this court on July 4, 2018.  Not. of Removal, ECF No. 1.  Plaintiffs allege three causes of action arising out of STS's termination of the Lease: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing and (3) declaratory relief.  Compl., ECF No. 1, at 17.  Defendants have moved for summary judgment on all three claims.  Mot., ECF No. 48.  Plaintiffs oppose, Opp'n, ECF No. 49, and defendants have replied, ECF No. 52.  The court heard oral argument on the motion on January 21, 2020, and directed defendants to supplement the record with a letter brief regarding a case discussed at hearing, *Realty & Rebuilding Co. v. Rea*, 184 Cal. 565 (1920), ECF No. 54, which they did, ECF No. 55.  The court now resolves the motion below.

/////

/////

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

/////

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

3

issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.     DISCUSSION

      A.     Claims Against Defendant Eagle Creek

Defendants argue that "[a]s an initial matter, all three of the claims against Eagle Creek fail because Eagle Creek is not a party to the Lease and is not in privity of contract with either Plaintiff."  Mot. at 10 (citing *Rhinerson v. Van's Int'l Foods, Inc.*, 2014 U.S. Dist. LEXIS 90471, *5 (N.D. Cal. 2014) (dismissing a claim for breach of contract as "the Court has found [] no authority for the proposition that plaintiff may bring a breach of contract claim without privity"); *Fair Oaks Fountains, LLC v. Liberty Surplus Ins. Corp.*, 2013 U.S. Dist. LEXIS 3140, *3–4 (E.D. Cal. 2013) (dismissing breach of contract claim where there was no contractual privity) (internal citations omitted)).  Plaintiffs' opposition makes no argument with respect to Eagle Creek.  *See* Opp'n.  At hearing, counsel for plaintiffs argued that STS is a wholly owned subsidiary of Eagle Creek, and that the decision to terminate was made by representatives of Eagle Creek.  Therefore, counsel argued, any arguments made with respect to STS are equally applicable to Eagle Creek; in other words, Eagle Creek is the "alter ego" of defendant STS.

The parties agree that STS Hydropower Ltd. entered into the operative Lease on February 22, 1988, with Richard D. Spight, who later assigned the Lease to plaintiff Texcell Inc. when Spight sold Texcell the underlying property.  SUF No. 2, 7.  They also agree that, on January 31, 2017, defendant Eagle Creek acquired defendant STS Hydropower Ltd. and thereafter converted it to the limited liability company, STS Hydropower, LLC.  SUF No. 9.  At hearing, plaintiffs argued there is evidence attached to their opposition showing Eagle Creek representatives were involved in the termination, but did not point to any specific documents, and the memorandum in opposition makes no reference to any such documents.  *See generally* Opp'n.  Because plaintiffs offer no concrete evidence to suggest defendant Eagle Creek is an "alter ego" of defendant STS, such that the parent company is in privity with its subsidiary's contract, there is no genuine dispute of material fact precluding summary judgment on the issue.  *See Dobson v. Twin City Fire Ins. Co*., No. SACV 11-192-DOC MLGX, 2011 WL 6179154, at *5 (C.D. Cal.

4

Dec. 12, 2011) (requirements for "alter ego" status); *Am. Gen. Life Ins. Co. v. Valentine*, No. LAC V1608097 JAK JCX, 2017 WL 5635014, at *7 (C.D. Cal. Apr. 13, 2017) (covenant of good faith and fair dealing imposes burden on "all parties to a contract") (citation omitted). Defendants' motion is GRANTED with respect to plaintiffs' claims against defendant Eagle Creek.

The court next considers defendants' arguments for summary judgment as to all three claims against the remaining defendants, STS and STS Hydropower Ltd.

### B. Breach of Contract Claim

Defendants urge the court to grant summary judgment on plaintiffs' first cause of action for breach of contract, arguing STS did not breach the Lease when it refused to rebuild the Facility, because Section 6.3 of the Lease relieved STS of that obligation when it terminated the Lease. Mot. at 11. Plaintiffs argue Section 6.3 is ambiguous and should be interpreted to relieve defendants of the obligation to rebuild only if they terminate the Lease prior to the Facility's destruction. Opp'n at 8. Additionally, plaintiffs argue their breach of contract claim should survive because defendants did not comply with Section 9.2 of the Lease, which imposes certain requirements before termination. *Id.* at 6–7. The court addresses these two arguments in turn.

#### 1. STS's Obligations Under Section 6.3

The gravamen of the parties' dispute is over the meaning of the phrase "shall exercise" in the following portion of the Lease:

> 6.3 Damage or Destruction of the Property
> . . . .
> (b) STS shall not be obligated to replace, repair, rebuild or restore the Property, and the Net Proceeds of the insurance shall not be applied as provided in subsection (a) of this Section, if:
>
> > (i) STS shall exercise its option to terminate this Lease Agreement pursuant to Section 9.2 hereof and shall duly perform its obligations under Section 9 hereof with respect to such termination, or
> >
> > (ii) an Event of Default under Section 9.1 hereof shall have occurred.

Compl, Ex. 1 ("Lease"), ECF No. 1, at 49. Plaintiffs concede section 6.3(b) "could potentially allow STS to terminate the Lease after destruction of the property without rebuilding," but argues

5

1    the section is ambiguous and should instead be interpreted in light of the Lease as a whole and the
2    parties' intentions.  Opp'n at 4, 10–11.  The most reasonable interpretation of the section,
3    according to plaintiffs, is that "the Lease could only be terminated prior to the destruction of the
4    Kanaka Plant, not after."  Opp'n at 8.

5    　　　　　The word "shall" adds unnecessary complexity to the two phrases, but it does not
6    render the section ambiguous.  As the Supreme Court has explained, "[t]hough 'shall' generally
7    means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even
8    'may.'"  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995).  Black's Law
9    Dictionary in fact provides many definitions of the word, including: "Has a duty to," "Will," "Is
10   entitled to."  *Shall*, Black's Law Dictionary (11th ed. 2019); *Flintkote Co. v. Gen. Acc. Assur.
11   Co.*, 410 F. Supp. 2d 875, 887 (N.D. Cal. 2006) ("In determining the plain meaning of language
12   in a contract, a court may look to a 'general' dictionary definition to aid in its analysis." (citing
13   *Scott v. Continental Ins. Co*., 44 Cal. App. 4th 24, 29 (1996))).  Section 6.3 is an example of the
14   kind of misuse of the word "shall" pointed out by the Court, because to read it as "must" makes
15   no sense.  Rather, in context, the plain meaning of section (b) and (b)(i), must be: STS *will* not be
16   obligated to repair the facility if STS exercises its option to terminate the Lease.  In other words,
17   at the time STS terminates the Lease, it is not obligated to repair the facility, as long as it
18   complies with Section 9.2.

19   　　　　　A contract or a provision of a contract is ambiguous if it is reasonably susceptible
20   of more than one interpretation or construction.  *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612,
21   619 (9th Cir. 1981).  Section 6.3 is not reasonably susceptible of different interpretations about
22   when the timing of termination must occur in order to avoid the obligation of repair.  Rather, the
23   section omits any reference to the timing of an event causing the need for repair.  If the parties
24   intended to limit STS's ability to terminate the lease and avoid repairing the facility in that way,
25   they could have included an express temporal limitation.  In fact, the parties did include a
26   temporal limitation in the subsequent section, relieving STS of its obligation if "an Event of
27   Default under Section 9.1 hereof shall have occurred."  Lease at 50 (section 6.3(b)(ii)).  The
28   addition of "shall have" in subsection (b)(ii) implies an Event of Default must have occurred prior

to STS's obligation arising to repair the Facility. Sub-section (b)(i) is not phrased this way, meaning simply that STS is not obligated to repair the facility if, at any time, it terminates the lease as provided for in the lease itself. *See Carpenter v. Republic of Chile*, No. 07-CV-5290 JS ETB, 2009 WL 5255327, at *6 (E.D.N.Y. July 29, 2009) (in analyzing statutory text, observing "[u]nder standard principles of contractual interpretation, the Court should presume that this omission was intentional[.]"), *aff'd in part, vacated in part on other grounds*, 610 F.3d 776 (2d Cir. 2010)

### 2. STS's Obligations Under Section 9.2

Having concluded STS was permitted by Section 6.3(b) to terminate the lease at the time it did, the court next determines if there is any genuine dispute of material fact regarding whether STS properly terminated the Lease under Section 9.2. Section 9.2 provides:

> The parties may mutually agree to terminate this Agreement at any time upon execution of a written agreement so stating signed by both of them subject to the provisions of paragraph 5.
>
> In addition, STS may terminate this Agreement upon sixty (60) days written notice to Lessor, if it establishes that continued operation of the hydroelectric facility on the Property has become uneconomical to the extent that STS cannot pay its costs and expenses of operation from revenues earned from the sale of electric power generated on the Property.
>
> In the event of the termination of this agreement pursuant to this paragraph, or for any reason, STS shall, as a condition of said termination, provide Lessor with copies of all plans, specifications, blueprints, manufacturers' brochures, wiring diagrams, and any other documentation relating to the improvements installed by STS on the Property subject to the restrictions and limitations of paragraph 11.14.

Lease at 54. Plaintiffs argue there is a factual dispute over whether STS met its obligations to (1) "establish[] that continued operation of the hydroelectric facility on the Property has become uneconomical to the extent that STS cannot pay its costs and expenses of operation from revenues earned from the sale of electric power generated on the property" and (2) "provide [plaintiffs] with copies of all [relevant documentation] relating to the improvements installed by STS on the Property," Lease § 9.2. Opp'n at 6–8; Pls.' Statement of Undisputed Facts("Pls.' SUF") 37, ECF No. 49-1. Defendants point out that these specific allegations are not pled in the complaint.

7

1   Reply at 6 n.2 (citing Compl.).  Although "a plaintiff may not obtain relief on the basis of factual
2   allegations not set forth in the complaint," *Law v. Kinross Gold U.S.A., Inc.*, No. 3:12-CV-00261-
3   LRH, 2014 WL 1577301, at *7 (D. Nev. Apr. 18, 2014) , *aff'd,* 651 F. App'x 645 (9th Cir. 2016),
4   the court finds plaintiffs' new arguments advance primarily legal theories, not new factual bases.
5   Because considering the new theories of recovery under Section 9.2 will not cause "undue delay"
6   or significantly increase the costs of suit, the court, in its discretion, considers them below.
7   *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (finding, where
8   new theories raised on summary judgment are legal, "the court should consider the consequences
9   of allowing the plaintiff's new theory," such as whether considering them would "cause
10  unreasonable delay," or make it "more costly or difficult to defend the suit").

11              a.      <u>Establish that Continued Operation is Uneconomical</u>

12              It is undisputed that STS "could not pay its costs and expenses of operation from
13  revenues earned from the sale of electric power generated from the Kanaka Facility" even prior to
14  the Ponderosa Wildfire.  SUF No. 21–29.  However, plaintiffs argue STS was required to
15  "establish" this fact by providing proof of STS's financial situation to plaintiffs upon termination
16  of the Lease.  *See* Opp'n at 6–7.  It is undisputed that STS did not provide financial documents or
17  otherwise "prove" to Texcell that running the Facility had become uneconomical.  Pls.' SUF 40.
18              Defendants argue it was sufficient to "establish" this fact internally within STS,
19  and the Lease does not require providing any documentation to plaintiffs.  Reply at 6.  The verb
20  "establish," used in this context, can be read to mean "to prove; to convince someone of."
21  *Establish*, Black's Law Dictionary (11th ed. 2019); *see also Establish*, Merriam-Webster (last
22  visited Feb. 5, 2020), https://www.merriam-webster.com/dictionary/establish ("to put beyond
23  doubt [or] prove"); *Flintkote Co.*, 410 F. Supp. 2d at 887.  The term is ambiguous insofar as it
24  could be interpreted to mean STS must "prove" the fact internally or to mean it is required to
25  "convince" Texcell of this fact.  Based purely on the language of the contract, the court finds the
26  more reasonable interpretation is the latter, for two reasons in particular.  *See City of Hope Nat'l*
27  *Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 75 Cal.Rptr.3d 333, 181 P.3d 142, 156–57 (2008)
28  ("Interpretation of a written instrument becomes solely a judicial function only when it is based

8

on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence."). First, taking "establish" to mean "prove," the verb implies an indirect object; proof is most often offered to someone else. *See Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2012 WL 2917450, at *6 (N.D. Cal. July 17, 2012) (hypothesizing that if the term "Licensee establishes" in contract means Licensee "prove[s]," then it means opposing party or court agrees with Licensee on the issue to be established). Second, it would be counterintuitive for a condition of termination to be a purely independent, internal determination by STS, the legitimacy of which plaintiffs have no way of verifying. *See Froelich v. Senior Campus Living, LLC*, 5 F. App'x 287, 289 (4th Cir. 2001) ("Without clear contractual language to that effect, we are unprepared to adopt such a counter-intuitive reading or believe that reasonable persons in the position of the parties would so interpret the contract.").[2]

Given this interpretation, defendants have not shown an absence of factual dispute regarding whether STS complied with Section 9.2 when it terminated the lease. Thus, summary judgment cannot be granted on the breach of contract claim specifically based on defendants' failure to "establish," in communication with plaintiffs, that continued operation is uneconomical prior to termination.

Notably, plaintiffs admit that, through discovery in this litigation, it has been established that continued operation of the plant was uneconomical. Pls.' Resp. SUF 21, ECF No. 49-1. As a result, it is not entirely clear what damages plaintiffs can recover for defendants' delay in performance. However, because defendants do not seek summary judgment of the damages element, the court need not make a finding on it here.

/////

/////

---

[2] "If a party believes, nevertheless, that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met." 4th Cir. R. 32.1.

                b.        <u>Provide Plaintiffs with Required Documentation</u>

It appears undisputed that, upon terminating the Lease, STS did not provide Texcell with documentation as required under Section 9.2. Defs.' Resp. SUF Nos. 41–42, ECF No. 52-1; *see* Lease § 9.2. Defendants argue summary judgment is nevertheless appropriate in their favor because "(a) documents were destroyed in the fire and (b) direct efforts were made to provide Texcell, by and through [plaintiff] Leong, with copies of the documents referenced in Section 9.2," but Mr. Leong did not respond to STS's request for a location to send the documents, given that the only address for notice in the Lease was the address of the prior owner, Mr. Spight. Reply at 7. The parties appear to agree that on October 19, 2017, Eagle Creek representative, Martin Karpenski, e-mailed Mr. Leong stating, "We have assembled copies of all documents and drawings relating to the facility which are available and which were not destroyed in the fire. We will email you those that are available in electronic format. Please let us know where you would like the hard copies of the other documents to be sent." *See* Pls.' Resp. SUF No. 33; Karpenski Decl., Ex. B, ECF No 48-5, at 9. Plaintiffs explained at hearing that the remaining documents were in a format that could not be sent electronically, and defendants did not dispute that representation. It is undisputed that Mr. Leong did not provide Mr. Karpenski with instructions regarding where the documents should be sent, SUF No. 34, but plaintiffs also argued at hearing that defendants knew Mr. Leong's physical address. *See* Pls.' Resp. SUF No. 3 (citing Oshinski Decl. ¶ 2, ECF No. 49-3 ("Plaintiffs did not receive any building plans, specifications, blueprints, manufacturers' brochures, wiring diagrams or any other documents concerning the original construction of the Kanaka Plant prior to the filing of this lawsuit" . . . "[D]efense counsel . . . eventually provided the documents.")). There is no evidence in the record before the court that defendants did in fact know Mr. Leong's physical address.

Even viewing the evidence in the light most favorable to plaintiffs, there is no genuine dispute of material fact respecting plaintiffs' failure to provide defendants with a physical address for mailing of the documents that could not be transmitted electronically, and this failure relieving defendants of the obligation to send the documents before terminating. *See R. J. Kuhl Corp. v. Sullivan*, 13 Cal. App. 4th 1589, 1601 (1993) (the nonoccurrence of a condition may be

1  excused by prevention or hinderance of its occurrence through a party's failure to act in good
2  faith).  Therefore, summary judgment in favor of defendants is appropriate on plaintiffs' breach
3  of contract claim to the extent it is based on this theory.

        C.        <u>Claim for Breach of Implied Covenant of Good Faith and Fair Dealing</u>

5         In their complaint, plaintiffs also allege defendants breached the implied duty of
6  good faith and fair dealing contained in every California contract, by "performing in a manner
7  that was unfaithful to the purpose of the contract," Compl. ¶¶ 32–33, when defendants terminated
8  the Lease after the Ponderosa Wildfire destroyed the Facility.

9         The covenant of good faith and fair dealing "exists merely to prevent one
10 contracting party from unfairly frustrating the other party's right to receive the benefits of the
11 agreement actually made."  *Tomada v. Home Depot U.S.A., Inc.,* No. 13–CV–1647, 2014 WL
12 2538792, at *17 (N.D. Cal. June 3, 2014) (citations, internal quotation marks omitted)).  The
13 covenant does not impose "substantive duties or limits on the contracting parties beyond those
14 incorporated in the specific terms of their agreement."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317,
15 349–50 (2000) (citation omitted).  It requires only that, when a contract provides a party with
16 discretion, that discretion be exercised in good faith and in accordance with fair
17 dealing.  *Tomada*, 2014 WL 2538792, at *17; *see also Cobb v. Ironwood Country Club*, 233 Cal.
18 App. 4th 960, 966 (2015).

19        Even viewing the evidence in the light most favorable to the plaintiffs, there is no
20 evidence to suggest defendants acted in bad faith in exercising the discretion afforded them by the
21 contract to terminate the Lease.  To the contrary, it is undisputed the Facility had become
22 uneconomical to operate even before the wildfire.  SUF Nos. 21–29.  The Lease clearly allowed
23 STS to terminate the Lease if operations became uneconomical; in fact, it was a prerequisite to
24 termination, as discussed above.  Lease § 9.2.  The Lease also expressly allowed STS to avoid
25 rebuilding the Facility if it terminated the Lease consistent with the lease terms, as also discussed
26 above.  Lease § 6.3.  STS acted in accordance with the contract when it terminated the Lease after
27 the wildfire, and plaintiffs offer no evidence to create a genuine factual dispute over whether
28 STS's termination was made in bad faith.

11

Accordingly, the court grants defendants' motion for summary judgment on the implied covenant claim.

D. <u>Declaratory Relief</u>

In conjunction with their breach of contract and breach of implied covenant of good faith and fair dealing claims, plaintiffs seek a judicial determination of their rights, title and interest in the Lease and a declaration that STS is obligated to replace the Kanaka Facility. Compl. ¶¶ 35–38.  For the reasons described above, there is no genuine dispute of material fact regarding whether defendants are required to replace the Kanaka facility, and defendants have now met the requirements under section 9.2.  Therefore, summary judgment of plaintiffs' declaratory judgment claim is also GRANTED in defendants' favor.

IV. <u>CONCLUSION</u>

The motion for summary judgment is GRANTED in defendants' favor as to plaintiffs' claims against Eagle Creek, and plaintiffs' breach of the covenant of good faith and fair dealing claim and declaratory relief claim against the remaining defendants.  The motion is DENIED as to plaintiffs' claim for breach of contract with respect to defendants' failure to "establish" the Facility was uneconomical before terminating the Lease.

A final pretrial conference is set for **Friday, November 6, 2020 at 10:00 a.m.** The parties SHALL meet and confer and file a joint status report 14 days prior to the final pretrial conference addressing matters the court should consider in setting a trial date, including whether they request referral to a magistrate judge to conduct a court-convened settlement before the final pretrial conference.  See E.D. L.R. 282.

This order resolves ECF No. 48.

IT IS SO ORDERED.

DATED: August 31, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE